DONALD L. GARBRECHT
LAW LIBRARY
JUN 11 2003

STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-02-133

THE MAINE HEALTH ALLIANCE,    )
        Plaintiff,            )
                              )
v.                            )          ORDER
                              )
MEDICAL MUTUAL INSURANCE      )
COMPANY OF MAINE,             )
        Defendant             )

FILED & ENTERED
SUPERIOR COURT

MAY 2 0 2003

PENOBSCOT COUNTY

Pending before the Court is The Maine Health Alliance's (the "Plaintiff) motion for summary judgment and Medical Mutual Insurance Company of Maine's (the "Defendant") cross motion for summary judgment. For the following reasons the Court grants the Plaintiff's motion for summary judgment and denies the Defendant's motion for summary judgment.

### Background

The Plaintiff, a non-profit corporation, is an integrated healthcare delivery system. PSMF ¶1. It purchased an insurance policy (the "Policy") from the Defendants that provided coverage from January 19, 2001, through January 19, 2002. PSMF ¶2. The Policy provides that the Defendants "pay on behalf of the INSUREDS all LOSS for which the INSUREDS shall be legally obligated to pay as a result of any CLAIM or CLAIMS made against any INSURED due to a WRONGFUL ACT…, provided that the CLAIM is first made during the POLICY PERIOD. PSMF ¶9. The Defendants must defend "any CLAIM against the INSUREDS seeking damages for LOSS, even if any of the allegations are groundless, false or fraudulent." PSMF ¶10. The Policy defines a claim as "any demand made upon any INSURED for damages, whether formal or informal, written or oral, or any occurrence which the INSURED believes may

1

subsequently give rise to a CLAIM as a result of a WRONGFUL ACT." PSMF ¶11. The Policy defines a loss as "any amount including CLAIMS EXPENSE, in excess of the applicable retention and not exceeding the Limit of Liability, which [the Plaintiff is] legally obligated to pay or which the [Plaintiff] shall be required or permitted by law to pay for any CLAIM or CLAIMS made against them for WRONGFUL ACTS." PSMF ¶14. Claims expenses include "legal fees and all other fees or costs incurred in the defense of any covered CLAIM including post-judgment interest and expenses for investigation, adjustment and appeal." PSMF ¶15.

On or about October 26, 2001, the Federal Trade Commission ("FTC") sent the Plaintiff formal notice that it was conducting a non-public investigation into certain of its contractual relationships that may violate federal law. PSMF ¶3. The notice stated in relevant part:

> The Bureau of Competition of the [FTC] is conducting a nonpublic investigation to determine whether the [Plaintiff] or others, have engaged in an effort to restrain trade by collectively negotiating the prices and terms of third party payer contracts for the provision of health care services, or collectively refusing to deal with third party payers. Such conduct could be a violation Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45. PSMF ¶3.

The Plaintiff informed its insurance broker, the Marsh Agency, that it had received the above notice and requested that the Agency take the appropriate steps to notify the Defendant. PSMF ¶5, ¶6. The Plaintiff contends that when it received notice of the FTC investigation it believed and still believes that the investigation may give rise to a claim for damages. The Defendant denies that the Plaintiff ever believed that the investigation may give rise to a claim for damages. PSMF ¶13.

On or about January 14, 2002, the Plaintiff sent a written demand for coverage pursuant to the Policy and demanded reimbursement for all defense costs incurred in

2

connection with the FTC investigation. PSMF ¶7. By a letter dated March 6, 2002, the Defendant denied the Plaintiff's request for a defense. PSMF ¶8. Both parties have filed motions for summary judgment. The Plaintiff claims its belief that the FTC investigation may result in a claim for damages, entitles it to reimbursement for its loss. The Defendant claims the FTC investigation is not a claim for damages and therefore not a covered claim.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56 (c), Beaulieu v. The Aube Corp., 2002 ME 79, ¶14, 796 A.2d 683. A fact is material when it may potentially affect the suit's outcome. Kenny v. Dep't of Human Services, 1999 ME 158, ¶3, 740 A.2d 560, 562. An issue is genuine if sufficient evidence exists concerning the dispute that would require a fact-finder to make a choice between the parties' opposing versions. Id. The Court finds that there are no disputed issues of material fact.[1]

The present case requires the Court to interpret an insurance contract. The interpretation of an insurance contract is a matter of law. Pelkey v. G.E. Capital Assurance Company, 2002 ME 142, ¶10, 804 A.2d 385. The Court interprets insurance contracts liberally in favor of an insured. York Insurance Group of Maine v. Van Hall, 1997 ME 230, ¶10, 704 A.2d 366. An insurance contract is ambiguous if the language is reasonably susceptible of multiple interpretations or if an ordinary person would not understand what the policy covered. Pelkey at ¶10. The Court construes ambiguities strictly against the insurer. Id.

---

[1] Although the Defendant claims the Plaintiff never believed the FTC investigation would give rise to a "claim for damages" the Court finds no sufficient evidence supporting the Defendant's claim that would require a fact-finder to choose between the parties' differing versions of the truth.

3

The Policy provides that the Defendant will "pay on behalf of the INSUREDS all LOSS which the INSUREDS shall be legally obligated to pay as a result of any CLAIM or CLAIMS made against any INSURED..." The Court must first determine whether the Plaintiff has a "claim" pursuant to the policy. The Policy defines "claim" as "any demand made upon any INSURED for damages, whether formal or informal, written or oral, or any occurrence which the INSURED believes may subsequently give rise to a CLAIM as a result of a WRONGFUL ACT." The evidence in the record establishes that the Plaintiff believed that the FTC investigation could "subsequently give rise to a claim" and therefore falls under the Policy's definition of "claim". The Court must next determine whether the Plaintiff has suffered a loss as a result of the claim. The Policy defines loss as "any amount including CLAIMS EXPENSE...which any INSURED is legally obligated to pay or which the ENTITY shall be required or permitted by law to pay for any CLAIM or CLAIMS made against them..." The Policy further defines CLAIMS EXPENSE as "legal fees and all other fees or costs incurred in the defense of a covered CLAIM". The Plaintiff has suffered a loss because of a claim. Although the Policy's definition section and description of coverage is clear, when read along the "duty to defend" clause, the Policy is reasonably susceptible of multiple interpretations and therefore ambiguous.

The Defendant contends that the FTC investigation is not a claim for damages and therefore not a covered claim. The Policy provides that the Defendant has the duty to defend "any CLAIM against the INSUREDS seeking damages for LOSS..." The Defendant argues that the "defense of a covered claim" clause in the "claims expense" definition refers to the duty to defend claims for damages. The Defendant further argues

4

that since the FTC investigation is not a claim for damages, the Plaintiff has not incurred any "expense in defense of a covered claim" and therefore has not suffered a loss. While the Policy may limit the duty to defend to claims seeking damages, nowhere else does it differentiate between types of "claims". Since the Plaintiff has a covered claim pursuant to the Policy's definition of "claim" and they have suffered "costs incurred in the defense of a covered claim" pursuant to the Policy's definition of "claims expense" they have suffered a loss pursuant to the Policy's definition of "loss".

The Defendant contends that this reading of the policy renders the "duty to defend" clause meaningless and does not allow the Court to employ the "comparison test" to determine whether there is a duty to defend. However, the policy language leaves the Court no other option. The Defendant could have employed language throughout the Policy, particularly when defining other terms, which differentiated between actual claims for damages and occurrences that could give rise to a claim for damages if it intended the "occurrences" clause to simply provide future coverage. Based on the record and a liberal reading of the ambiguous contract in favor of the Plaintiff, the Court concludes summary judgment for the Plaintiff is appropriate.

THE DOCKET ENTRY IS:

The Plaintiff's Motion for Summary Judgment is granted. The Defendant's Cross-Motion for Summary Judgment is denied.

The clerk is ordered to incorporate this decision into the docket by reference.

DATED: May 20, 2003

_____
Justice, Superior Court

5

THE MAINE HEALTH ALLIANCE - PLAINTIFF
12 STILLWATER AVENUE
BANGOR ME 04401
Attorney for: THE MAINE HEALTH ALLIANCE
GREGORY BRODEK
DUANE MORRIS LLP
88 HAMMOND STREET, SUITE 500
BANGOR ME 04401


Attorney for: THE MAINE HEALTH ALLIANCE
KATHERINE L YOUNG
DIANE MORRIS LLP
470 ATLANTIC AVENUE, SUITE 500
BOSTON MA 02210-2208


Attorney for: THE MAINE HEALTH ALLIANCE
VISITING ATTORNEY
VISITING ATTORNEY
-

- -

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2002-00133


**DOCKET RECORD**

vs
MEDICAL MUTUAL INSURANCE COMPANY OF MAINE - DEFENDANT
ONE CITY CENTRE P O BOX 15275
PORTLAND ME 041125275
Attorney for: MEDICAL MUTUAL INSURANCE COMPANY OF
MAINETOPHER TAINTOR
NORMAN HANSON & DETROY
415 CONGRESS ST
PO BOX 4600
PORTLAND ME 04112


Filing Document: COMPLAINT                     Minor Case Type: CONTRACT
Filing Date: 07/24/2002

# Docket Events:

07/24/2002 FILING DOCUMENT - COMPLAINT FILED ON 07/24/2002
          EXHIBIT A AND B ATTACHED

07/24/2002 Party(s):  THE MAINE HEALTH ALLIANCE
          ATTORNEY - RETAINED ENTERED ON 07/24/2002
          Plaintiff's Attorney: GREGORY BRODEK

07/24/2002 Party(s):  THE MAINE HEALTH ALLIANCE
          OTHER FILING - ENTRY OF APPEARANCE FILED ON 07/24/2002
          BY KATHERINE L. YOUNG, ESQ, 470 ATLANTIC AVENUE, SUITE 500, BOSTON, MA.  02210, 617-289-
          9253, FOR MAINE HEALTH ALLIANCE. (COPY OF MEJIS ATTORNEY INFORMATION FORM FORWARDED TO
          ATTORNEY YOUNG)

07/24/2002 Party(s):  THE MAINE HEALTH ALLIANCE
          MOTION - MOTION TO IMPOUND FILED ON 07/24/2002
          PURSUANT TO MAINE RULES OF CIVIL PROCEDURE 7(B) AND 79(B)1, UNOPPOSED, WITH DRAFT ORDER.

07/24/2002 CASE STATUS - CASE FILE LOCATION ON 07/24/2002